## SCHOOL BOARD OF WAKULLA COUNTY v ARNOLD
### Case No. 88-2022
State of Florida, Division of Administrative Hearings

February 3, 1989

**APPEARANCES OF COUNSEL**

**J. David Holder,** Rigsby & Holder, for petitioner.

**Marva A. Davis,** Anita Bryant Motter, Marva A. Davis, P.A., for respondent.

**OPINION OF THE COURT**

LARRY J. SARTIN, Hearing Officer.

### RECOMMENDED ORDER

Pursuant to written notice a formal hearing was held in this case before Larry J. Sartin, a duly designated Hearing Officer of the Division of Administrative Hearings, on November 9 and 10, 1988, in Crawfordsville, Florida.

### INTRODUCTION

By letter dated March 21, 1988, the Petitioner, the School Board of Wakulla County (hereinafter sometimes referred to as the "School

Board"), notified the Respondent, Helen T. Arnold, that her employment with the Petitioner was being terminated. In a document dated April 11, 1988, Ms. Arnold requested an administrative hearing to contest the proposed action of the Petitioner. The request for hearing was forwarded to the Division of Administrative Hearings by letter from the Petitioner dated April 19, 1988.

The School Board was incorrectly designated as the Respondent and Ms. Arnold was incorrectly designated as the Petitioner when this case was opened at the Division of Administrative Hearings. Following argument of the parties, the parties were correctly designated and the style of the case was changed to reflect the status of the School Board as the Petitioner and Ms. Arnold as the Respondent.

Prior to the commencement of the formal hearing Ms. Arnold filed a Motion for Summary Judgment. This Motion was withdrawn at the commencement of the formal hearing.

At the formal hearing the Petitioner presented the testimony of Robert H. Carter, Roger Stokley, Wade Nobles, Jan Putnal, Judy Myhre, Jimmy Duggar, Marie Chapman, Mike Falk and Harold Thurmond. Mr. Carter was accepted as an expert in school board finance and school board budgeting processes. The Petitioner also presented rebuttal testimony by Mr. Stokley and Luvania Lackey. The Petitioner presented twenty-one exhibits which were accepted into evidence.

Ms. Arnold testified on her own behalf and presented the testimony of Marie Chapman. Ms. Arnold also offered twenty exhibits. All of the exhibits except Respondent's 2 were accepted into evidence. A ruling on Respondent's 2 was reserved. Respondent's exhibit 2 is hereby accepted into evidence.

Official recognition of Section 231.36, Florida Statutes, was taken.

The parties have filed proposed recommended orders containing proposed findings of fact. A ruling on each proposed finding of fact has been made either directly or indirectly in this Recommended Order or the proposed finding of fact has been accepted or rejected in the Appendix which is attached hereto.

### ISSUE

Whether the Petitioner acted properly in discontinuing the employment of Helen T. Arnold pursuant to a continuing contract of employment with the Petitioner?

### FINDINGS OF FACT

1. The School Board operates five schools and the St. Marks Adult

Community Center. The schools include Sopchoppy Elementary School, Crawfordville Elementary School, Shadeville Elementary School, Wakulla Middle School and Wakulla High School.

2. The School Board employed approximately 175 instructional personnel during 1988.

3. The Wakulla Classroom Teachers Association (hereinafter referred to as the "Association") represents instructional personnel of the School Board in labor negotiations.

4. The Association has entered into a "Master Contract Agreement," a collectively bargained agreement, with the School Board.

5. Article I, Section B of the Master Contract Agreement provides that the School Board has the right to "direct its employees, take disciplinary action for proper cause, and relieve its employees from duty because of lack of work or for other legitimate reasons."

6. The Master Contract Agreement does not provide the method for determining which instructional personnel may be fired by the School Board.

7. Helen T. Arnold was certified by the Florida Department of Education as a teacher in the area of guidance in elementary and second (middle and high schools) schools.

8. During the 1987-1988 school year Ms. Arnold was employed by the School Board pursuant to a Continuing Contract of Employment for Instructional Personnel of the Public Schools (hereinafter referred to as the "Continuing Contract"). The Continuing Contract was entered into on June 6, 1980.

9. Ms. Arnold was employed a total of twelve years by the School Board.

10. During her employment by the School Board, Ms. Arnold was employed as a guidance counselor, an alternative education teacher, an in-school suspension teacher and as an itinerant substitute teacher.

11. The School Board employed two itinerant substitute teachers during the 1987-1988 school year. These positions were to be held by individuals fully certified by the Florida Department of Education on a full-time basis as substitute teachers throughout the school district.

12. During the 1987-1988 school year, Ms. Arnold was employed as one of the itinerant substitute teachers. She was based at Wakulla High School. Ms. Arnold only taught at Wakulla High School during the 1987-1988 school year.

13. The Continuing Contract designates Ms. Arnold for reference

purposes as the "Teacher." This designation, however, does not specify Ms. Arnold's function with the School Board. The Continuing Contract specifically provides that "the School Board has appointed and employed the Teacher [Ms. Arnold] for continuing employment in the position of *Counselor."* [Emphasis added].

14. The Continuing Contract is to remain in force and effect "from year to year . . . except that the Teacher may be suspended or removed for cause as provided by law." The Continuing Contract is subject to any and all laws, lawful rules and regulations, and policies of the State Board of Education and the School Board. The Continuing Contract provides that it will not operate to prevent discontinuance of a position as provided by law.

15. Under the Continuing Contract, Ms. Arnold had the right to continue in a position as a counselor or a similar position, without the necessity for annual nomination or reappointment. Pursuant to the Continuing Contract, the School Board could assign Ms. Arnold to perform services consistent with the Continuing Contract and to assign her throughout the school district.

16. The School Board had an operating budget for the 1987-1988 school year of approximately eleven to twelve million dollars.

17. Prior to the 1987-1988 school year the School Board directed that a reserve of $350,000.00 should be maintained. This directive was not adopted as a policy of the School Board.

18. The amount of the reserve is approximately three percent of the School Board's 1987-1988 budget. Five percent is generally accepted as adequate.

19. The purpose of a reserve is to meet unanticipated expenses, shortfalls in State sales taxes, which determine the State's funding of the School Board, and changes in the projected student population of the School Board during the year.

20. In January of 1987, the School Board estimated the number of students they would have during the 1987-1988 school year. This estimate was used to determine, in part, the amount of funds which the School Board expected to receive between July 1, 1987, and June 30, 1988, from the State of Florida. The estimate of students also determined the staff which the School Board anticipated it needed for the 1987-1988 school year for each of its five schools.

21. The funds anticipated to be received by the School Board were allocated to meet the projected number of students at each of the schools in the school district.

228

■■■■■■■■

22. In October of 1987, and February of 1988, the School Board was required to count the actual number of students. Based upon these counts, the State can adjust the amount of State funds payable to the School Board retroactively to July 1, 1987.

23. Based upon the October, 1987, count of students the School Board discovered that it had a greater number of students (approximately 100 more students) in its elementary schools and a lesser number of students in its middle and high schools than had been estimated in January of 1987. Therefore, the School Board received more funds overall from the State.

24. The School Board determined, based upon the actual count of students in October, 1987, that it needed additional staff and other items at the elementary schools, however, and few staff and other items at the middle and high schools. The School Board therefore hired additional staff for the elementary schools. The School Board did not transfer or reduce staff from the middle and high schools. The hiring of additional staff and failure to reduce unneeded staff at the middle and high schools increased the total expenses above budgeted expenses of the School Board for the 1987-1988 school year.

25. The net effect of the October, 1987, count of students was that the School Board's reserve was reduced from $350,000.00 to $217,000.00. It was also determined that unless steps were taken to reduce expenses, the reserve would be reduced further for the 1988-1989 school year.

26. The Director of Business of the School Board informed the Superintendent of the School Board that he believed that it would be necessary to reduce expenses in order to meet the School Board's directive to maintain a $350,000.00 reserve for the 1988-1989 school year.

27. Approximately 79% of the School Board's budget is allocated to personnel expenses.

28. The Superintendent concluded that the best way to reduce expenses for the 1988-1989 school year was through a reduction in staff. It was not possible to achieve the necessary reduction of expenses by reducing other costs. The School Board, however, hired new employees for the 1987-1988 and 1988-1989 school years.

29. The Superintendent decided to recommend a reduction in personnel which would have the least impact on instruction of the core curriculum first.

30. Ultimately, the Superintendent recommended elimination of the following positions:

  a. One elementary school teacher at Crawfordville Elementary School;
  b. One study hall teacher at Wakulla High School;
  c. One guidance counselor at Wakulla High School;
  d. One social studies teacher at Wakulla High School;
  e. One mathematics teacher at Wakulla High School;
  f. Two itinerant substitute teacher positions; and
  g. One district-level administrator.

31. At a School Board meeting held on March 14, 1988, the School Board accepted the recommendation of the Superintendent and abolished the recommended positions, including the two itinerant substitute teacher positions, effective for the 1988-1989 school year.

32. Pursuant to Continuing Contract, Ms. Arnold continued in the employment of the School Board even though her itinerant substitute teacher position had been abolished.

33. After approval of the abolishment of the positions recommended by the Superintendent, the School Board needed to determine which employees would have to be terminated as a result of the reduction in positions.

34. The Superintendent concluded that Rule 3.08 of the School Board should govern the selection of the employees to be terminated by the School Board. Rule 3.08 of the School Board provides, in pertinent part:

REDUCTION IN PERSONNEL—If a reduction in personnel requires the School Board to choose from its employees the Board shall retain the employees best qualified. In determining qualifications the Board shall consider without limitation educational qualifications, efficiency, compatibility, character and capability to meet educational service needs of the community.

35. The Superintendent and the Principal of Wakulla High School met with Ms. Arnold on March 15, 1988, in the Principal's office. Ms. Arnold was informed that the itinerant substitute teacher position she occupied was being eliminated for the 1988-1989 school year. She was also informed that she would be considered pursuant to Rule 3.08 of the School Board along with Art Mainwood and Betty Jensen for the one remaining guidance position at Wakulla High School.

36. Ms. Jensen was certified in guidance and was employed by the

■■■■■■■■■■■■■■

School Board pursuant to a continuing contract. Mr. Mainwood was also certified in guidance and was employed by the School Board pursuant to an annual contract. Ms. Jensen and Mr. Mainwood worked at Wakulla High School.

37. Ms. Arnold was informed during the March 15, 1988, meeting with the Superintendent that a recommendation would be made to the School Board at its March 21, 1988, meeting as to which of the three guidance personnel should be retained. No written notice of the School Board's March 21, 1988, meeting was provided to Ms. Arnold.

38. The Superintendent decided that Ms. Arnold should be considered for the guidance position because that was the area she was certified in. The Superintendent decided that Ms. Arnold should be considered only with others certified in guidance currently employed at Wakulla High School because that was where Ms. Arnold had been "stationed."

39. At no time was Ms. Arnold considered for other guidance positions in the school district.

40. In order to determined the "best qualified" personnel, the Superintendent selected six administrators to independently review Ms. Arnold comparatively with Ms. Jensen and Mr. Mainwood. The six administrator included the Principal of Wakulla High School, the Director of Instruction for the School Board, the Assistant Principal for Instruction at Wakulla High School, the Assistant Principal at Wakulla High School, the Coordinator of Personnel and Automated Student Records for the School Board and a former principal of Wakulla High School.

41. The six administrators did not meet with Ms. Arnold, Ms. Jensen and Mr. Mainwood. They performed their review based upon their knowledge of the three individuals. The three were compared by each of the six administrators based upon the specific criteria listed in Rule 3.08 of the School Board.

42. At least four of the six administrators had never directly supervised Ms. Arnold or made any formal observation of the performance of her duties. Some of the evaluators knew very little about Ms. Arnold.

43. Although the six administrators applied the criteria of Rule 3.08 of the School Board independently, it was not possible for the six reviewers to effectively determine who was the "best qualified" of the three persons they reviewed because of their limited knowledge of the three persons.

231

■■■■■■■■■

44. Ms. Jensen ws given the highest overall score. Ms. Arnold received the lowest overall score and the lowest individual score from all six of the evaluators.

45. The method of review employed with regard to Ms. Arnold was not followed in evaluating all of the persons affected by the School Board's reduction in staff. Mary Nasby, another employee on continuing contract, was evaluated in a similar manner to Ms. Arnold. Hossein Achtchi, another employee was continuing contract, was not, however, evaluated in a similar manner.

46. The Superintendent considered the scores of the six administrators in conjunction with the teacher evaluations and other documents in the files of Ms. Arnold, Ms. Jensen and Mr. Mainwood. Based upon this evaluation, the Superintendent concluded that Ms. Jensen was the best qualified of the three individuals and that she should be retained in the one guidance position at Wakulla High School.

47. The Superintendent recommended that the School Board retain Ms. Jensen and that Ms. Arnold's Continuing Contract be terminated. The Superintendent also determined that the annual contract of Mr. Mainwood would not be renewed.

48. The Superintendent's recommendation concerning the guidance position at Wakulla High School was approved by the School Board at a meeting on March 21, 1988.

49. During the March 21, 1988, meeting of the School Board, the School Board terminated the employment of eight individuals. Of these eight individuals, three had continuing contracts of employment with the School Board: Ms. Arnold, Ms. Nasby and Mr. Achtchi. Ms. Arnold and Ms. Nasby are Black females and Mr. Achtchi is an Iranian male. The other five employees terminated by the School Board were all on annual contracts of employment.

50. Ms. Arnold was provided a letter dated March 21, 1988, from the School Board Chairman informing her that her Continuing Contract had been terminated effective June 7, 1988. The letter was hand delivered to Ms. Arnold on March 22, 2988.

51. Ms. Arnold was informed that she had the right to request a formal administrative hearing to contest the School Board's action. Ms. Arnold exercised her right and requested a formal administrative hearing.

52. At the time that the decision was made to terminate Ms. Arnold's employment with the School Board there was at least one individual employed by the School Board in a guidance position for

232

which Ms. Arnold qualified who was not certified in the area of guidance: Melinda Young. Ms. Young was assigned as a counselor at Wakulla Middle School but was not certified in the area of guidance. Ms. Young applied for certification in guidance in May of 1988, but did not receive it until August, 1988.

53. Additionally, there was at least one individual employed by the School Board in a counselor position for which Ms. Arnold was qualified who was employed under an annual contract of employment: Deborah Thibos.

54. The contracts of Ms. Young and Ms. Thibos, as well as the continuing contract of Nancy K. Pope, another person filling a counselor position, all provided that they were employed in the position of "teacher" as opposed to the position of "counselor," as specified in Ms. Arnold's Continuing Contract.

55. Ms. Arnold was not considered for the counselor positions held by Ms. Young, Ms. Thibos or Ms. Pope. Nor was Ms. Arnold compared with Gregory Burns, another guidance counselor of the School Board.

56. Subsequent to the School Board meeting of March 21, 1988, but before the proposed action of the School Board became final (which still has not occurred), Ms. Jensen resigned from the School Board. Therefore, before the School Board's action with regard to Ms. Arnold became final, Ms. Arnold may have become the "best qualified" person of the three considered for the position. Despite Ms. Arnold's availability and desire to continue with the School Board, she was not considered for the counselor position when Ms. Jensen left or when the position became available a second time after Ms. Arnold's termination. Instead, the School Board hired two successive people from outside the School Board under annual contract.

57. Despite the fact that Ms. Arnold had been employed in positions other than guidance, she was not considered for any other positions with the School Board before her termination or after her termination when openings, including substitute teacher positions, became available.

58. Ms. Arnold applied for vacancies which arose with the School Board after she was terminated. The School Board therefore should have known that she still desired to be employed by the School Board.

59. Ms. Arnold has been employed during the 1988-1989 school year by the Leon County School Board pursuant to an annual contract and at a salary of $26,311.00. Had she continued with the School Board during the 1988-1989 school year, she would be making $24,307.00.

233

Ms. Arnold's rights under her Continuing Contract, however, are greater than her rights under the annual contract with the Leon County School Board.

## CONCLUSIONS OF LAW

The Division of Administrative Hearings has jurisdiction of the parties to and the subject matter of this proceeding. Section 120.57(1), Florida Statutes (1987).

The reduction of staff positions by a school board is generally a permissible means of addressing a budget problem. Art. IX, Section 4(b), Constitution of Florida; Sections 230.03(2), 230.22, 230.23(4) - (5), 230.35 and 231.36(5), Florida Statutes; and *Tolar v School Board of Liberty County*, 363 So.2d 144 (Fla. 1st DCA 1978). A school board may not, however, act "arbitrarily, with impermissible motives or otherwise in violation of the school code." *Tolar*, 363 So.2d at 145. Based upon the evidence presented in this case, it is concluded that the School Board has failed to prove that its actions were not lawful in this case.

The evidence proved that the School Board estimated its expenses and revenue for the 1987-1988 school year based upon its January, 1987, student count. The School Board also determined the staff needed at each of its schools for the 1987-1988 school year based upon the January, 1987, count. In October, 1987, an actual count of students indicated that the School Board was entitled to more State funds because the School Board had more students than it had anticipated. The School Board also discovered, however, tht it did not have sufficient staff at the elementary schools for the actual number of students and that it had too much staff at the middle and high schools. Rather than transferring staff between schools, the School Board simply hired additional staff to meet the need at the elementary schools. This resulted in an increase in expenditures at the elementary schools and the expenditure of unnecessary funds at the middle and high schools. The problem with these facts is that the School Board failed to present sufficient evidence to show that it could not have avoided the additional expense by shifting staff between the elementary schools and the middle and high schools. The School Board has, therefore, failed to prove that its action in eliminating positions on March 14, 1987, was necessary.

Even if it were concluded that the School Board was justified in reducing positions, the School Board's action with regard to Ms. Arnold was improper.

Section 231.36(5), Florida Statutes, provides the following with

234

regard to reductions in personnel on continuing or professional service contracts:

(5) Should a school board have to choose from among its personnel who are on continuing contracts or professional service contracts as to which should be retained, such decisions shall be made pursuant to the terms of a collectively bargained agreement, when one exists. If no such agreement exists, the district school board shall prescribe rules to handle reduction in work force.

This provision applies when a school board is forced to reduce personnel *"who are on continuing contracts or professional service contracts."* The evidence in this case failed to prove that the School Board had to make a choice in this case between such personnel. The evidence proved that there was at least one other guidance position for which Ms. Arnold was qualified which was filled by a person on an annual contract. Additionally, the evidence proved that there were other guidance positions filled by persons not certified in guidance. Finally, the evidence proved that the School Board had routinely assigned Ms. Arnold to positions in areas other than guidance. In fact, the School Board has srenuously argued throughout this proceeding that Ms. Arnold was employed as a "teacher." Despite this fact, the School Board did not consider terminating teachers employed pursuant to annual contract rather than terminating Ms. Arnold, and others on continuing contracts.

Based upon the foregoing, it is concluded that the School Board did not have to choose from among its personnel who were on continuing contracts. The School Board could have eliminated individuals on annual contracts or persons not qualified to hold a guidance position which Ms. Arnold was qualified to hold. The School Board, therefore, did not have the authority pursuant to Section 231.36(5), Florida Statutes, to terminate Ms. Arnold.

Even if the School Bord had proved that a reduction of staff was necessary in this case and it is assumed that the provisions of Section 231.36(5), Florida Statutes, apply, the School Board has failed to prove that its action was proper.

The Master Contract Agreement generally recognizes the School Board's right to reduce staff. Article I, Paragraph B of the Master Contract Agreement provides, in pertinent part, the following:

It is also the right of the public employer to direct its employees, take disciplinary action for proper cause, and relieve its employees from duty because of lack of work or for other legitimate reasons.

Although the Master Contract Agreement does not specify the

**235**

manner in which reductions are to be made, the School Board has provided in Rule 3.08 of the School Board for the manner in which such reductions should be made. Ms. Arnold's arguments concerning the inapplicability of this Rule are rejected.

Rule 3.08 of the School Board provides, in pertinent part:

REDUCTION IN PERSONNEL—If a reduction in personnel requires the School Board to choose from its employees the Board shall retain the employees best qualified. In determining qualifications the Board shall consider without limitation education qualifications, efficiency, compatibility, character and capability to meet educational service needs of the community.

In applying this Rule, the School Board is required to "retain the employees best qualified." The School Board, in determining whether to retain Ms. Arnold, did not determine whether Ms. Arnold was one of the *School Board's* best qualified employees. Instead, the School Board purported to determine whether Ms. Arnold was one of *Wakulla High School's* best qualified employees. Restricting the determination to such a limited class is not permissible or contemplated by Rule 3.08 of the School Board. In order for the School Board to retain *its* best qualified employees, Ms. Arnold should have been considered in relation to all guidance employees. Additionally, as indicated, *supra,* the School Board routinely assigned Ms. Arnold to teaching positions in areas other than guidance. Despite this fact, the School Board did not consider Ms. Arnold in relation to teaching positions for which she may have been the best qualified employee.

Additionally, the manner in which the School Board conducted its evaluation of Ms. Arnold was improper. Ms. Arnold was evaluated, without any opportunity to meet her evaluators, by a group of administrators, some of whom had very limited knowledge of her qualifications. Therefore, the School Board has failed to prove that the administrators who evaluated Ms. Arnold had the ability to prove that the administrators who evaluated Ms. Arnold had the ability to determine whether she was the best qualified.

Based upon the foregoing, it is concluded that the School Board failed to properly apply Rule 3.08 of the School Board.

Ms. Arnold has argued that the School Board's action was improper because she was not given notice of the School Board's consideration of the question of whether to abolish the itinerant substitute teacher position she held during the 1987-1988 school year. The authorities cited in support of this argument are distinguishable from this case.

Ms. Arnold has also argued that costs, including attorney's fees,

236

should be awarded in this proceeding. No authority for such an award has been cited. Nor is Ms. Arnold entitled to such an award.

## RECOMMENDATION

Based upon the foregoing Findings of Fact and Conclusions of Law, it is

RECOMMENDED that the School Board offer Ms. Arnold a counselor position for the 1988-1989 school year at the same salary she would have been entitled to if she had worked for the School Board for the 1988-1989 school year. It is further

RECOMMENDED that the School Board tender contributions to the State pension fund on Ms. Arnold's behalf in the amount which will insure that Ms. Arnold is entitled to the same retirement benefits as if she had worked for the School Board for the 1988-1989 school year. It is further

RECOMMENDED that the School Board ensure that Ms. Arnold receives retirement credit as if she had worked for the School Board for the 1989-1989 school year. It is further

RECOMMENDED that the School Board pay Ms. Arnold the moneys it would have contributed to the State pension fund on Ms. Arnold's behalf if she had worked for the School Board for the 1988-1989 school year, if the School Board is unable to insure that Ms. Arnold receives retirement credit for the 1988-1989 school year.

DONE and ENTERED this 3rd day of February, 1989, in Tallahassee, Florida.